IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NATIONAL LABOR RELATIONS BOARD,
    Applicant,

vs.                                                     Case No.: 3:14mc52/MCR/EMT

DURHAM SCHOOL SERVICES, L.P.,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

        This cause is before the court on an application filed by The National Labor Relations Board ("the Board") seeking an order compelling respondent Durham School Services, L.P. ("Durham") to comply with an administrative subpoena duces tecum that the Board issued relevant to an unfair labor practice proceeding. The proceeding was initiated upon charges filed by Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 991, claiming that Durham had violated Sections 8(a)(l) and (3) of the National Labor Relations Act (29 U.S.C. § 158(a)(l) and (3)), by discharging employees Linda Cramer and Christina Marrero in retaliation for participating in union activities.[1] *See* Doc. 1, ex. B (Case 15-CA-118939, charges relating to Linda Cramer) and ex. C (Case 15-CA-118943, charges relating to Christina Marrero).

---

[1] 29 U.S.C. § 158 provides in relevant part:
    (a) Unfair labor practices by employer
        It shall be an unfair labor practice for an employer--
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
                . . .
    (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

## I.  BACKGROUND

The charges were filed on December 13, 2013, and on January 23, 2014, the Board issued subpoena duces tecum B-716522 directing Durham to produce certain records and papers related to the two charges (*id.* ex. D).  On February 3, 2014, Durham petitioned the Board to revoke the subpoena, and on April 24, 2014, the Board denied the petition (*id.* exs. F, G).  Durham then responded to the subpoena, providing several, but clearly not all, of the requested documents.  Durham stated in its response that it found the charges underlying the discovery requests to be baseless and not enough to establish a prima facie case of retaliation against either employee.

Linda Cramer's employment as a school bus driver for Durham was terminated after she had been involved in three "preventable accidents."  The applicable policy, as set forth in Durham's Employee Handbook, provides that upon "the third preventable accident within a 24 month rolling period, the employee will be terminated" (doc. 5, ex. C).  There is evidently no dispute that Cramer had reviewed and understood this policy, or that she indeed had been involved in three such accidents during a 24-month period (*id.* ex. D).  However, the charge alleges that the actual reason for Cramer's discharge was retaliation for her union activities and that Cramer's firing amounted to differential treatment as compared to other, similarly situated employees who were not affiliated with union activities.

Christina Marrero, also a Durham school bus driver, was terminated after she left a child unattended on a school bus while the bus was still running (*id.* ex. H).  The relevant policy provides that certain serious offenses "can and may result in immediate termination of employment on the first offense," and that one such offense is "leaving a passenger unattended" (*id.* ex. E). Additionally, Durham's "Child Check" policy also states that "[i]f a child is left unattended on the vehicle, regardless of length of time, both the driver and bus monitor/attendant (if present) will be terminated on the first offense"(*id.* ex. F).  There is also no dispute that Marrero reviewed and understood this policy (*id.* ex. G).  As with Cramer, the charge alleges that Marrero's discharge was in retaliation for her involvement in union activities (*id.* ex. B).

The Board asserts that Durham has failed to fully comply with the subpoena duces tecum by refusing to produce the following records:

<u>Case 15-CA-118939 (charges relating to Linda Cramer)</u>:

(1) Copies of all paperwork Durham submitted to the unemployment office in response to Linda Cramer filing an unemployment claim related to her discharge.

(2) Copies of all the disciplinary files and the contents therein for all employees employed by Durham at the facility located at 6544 Firehouse Road, Milton, Florida who had three or more preventable vehicle accidents in a rolling 24-month period since January 1, 2012.

<u>Case 15-CA-118943 (charges relating to Christina Marrero)</u>:

(1) Copies of all paperwork Durham submitted to the unemployment office in response to Christina Marrero filing an unemployment claim related to her discharge.

(2) Copies of all of Durham's work rules governing notifying dispatch of unexpected situations that were in effect at Durham's facility located at 6544 Firehouse Road, Milton, Florida from January 1, 2012, to present.

(3) Copies of Durham's work rules governing the process of using the restroom while passengers are in the vehicle that were in effect at Durham's facility located at 6544 Firehouse Road, Milton, Florida from January 1, 2012, to present.

(4) Copies of the progressive discipline policies related to paragraphs (2) and (3) above.

(5) Copies of Durham's work rules governing endangering of children that were in effect at Durham's facility located at 6544 Firehouse Road, Milton, Florida from January 1, 2012, to present.

(6) Copies of the disciplinary files and the contents therein for all employees employed by Durham at Durham's facility located at 6544 Firehouse Road, Milton, Florida who engaged in any of the acts described above in paragraphs (2), (3) and (5) since about January 1, 2012.

(7) Copies of documents relating to Facebook messages regarding Christina Marrero during the period November 6, 2013 to November 13, 2013.

After Durham's petition to revoke the subpoena was denied, Durham responded in part to the subpoena requests. Durham in particular responded to the requests relating to "comparator" employees at Durham who might be situated similarly to Cramer or Marrero. In doing so, Durham stated that none of the comparator employees identified by the Board evidenced disparate treatment or discrimination on Durham's part. This was owing to the fact that none of the alleged comparators had evidently been involved in three preventable accidents or in a serious, immediately terminable

offense, and therefore none were actually similarly situated with Cramer or Marrero.[2] Durham went on to assert that it had already produced more than one thousand documents and therefore would not review the voluminous employee personnel files required by the Board in its other discovery requests unless the Board provided a greater factual basis for the charges of retaliation (doc. 5, exs. S, U, and Y).

However, as the Board's investigation developed, it discovered one employee, Bobby Johnson, who was a proper comparator employee. As the Board states:

> According to Durham's work rules an employee who fails to report an accident is discharged on the first offense (Applicant Reply Exhibit 1). However, on March 7, 2011, Bobby Johnson (Johnson) failed to report a preventable accident and only received a final warning (Applicant Reply Exhibit 2), which indicates that Durham does not always follow its stated work rules.
>
> Moreover, on January 30, 2012, Johnson was involved in a preventable accident. However, Johnson was not terminated although he had received a final warning on March 7, 2011. Thereafter, on January 31, 2012, Johnson was involved in another preventable accident. Although he had been involved in three preventable accidents with a 24-month period, Johnson was not terminated after his January 31, 2012 preventable accident. Durham's failure to discharge Johnson after the January 31, 2012 preventable accident in accordance with its work rule (doc. 5-3) indicates that Durham does not always follow its stated work rules.
>
> On September 26, 2012, Jonson [sic] was involved in his fourth accident. However, he was not discharged until November 13, 2012.

(doc. 15 at 4).

The Board detailed Johnson's disciplinary history with Durham in a June 13, 2014, email message and asked for an explanation as to why Johnson was not terminated sooner in accordance

---

[2] While Durham identifies Exhibit R to its response (doc. 5, ex. R) as a letter showing that it stated to the Board that none of its comparator employees had been involved in three preventable accidents, Exhibit R actually appears to be a document from another case involving an employee named George Warren. Additionally, there appears to be no specific document in which Durham states that there were no comparators with serious, immediately terminable offenses akin to Marrero's, though Durham does state in its brief that none of the comparators were involved in the specific, serious offense of leaving a child unattended on a bus (doc. 17 at 3). Nonetheless, as the Court follows the gist of the correspondences and other evidence in the file, it is a reasonable conclusion that none of the comparators had had similar offense or accident histories that would make them true comparators to Cramer or Marrero, at least until the file of employee Bobby Johnson was produced, as the Court describes *infra*.

with Durham's policies, but Durham responded that it was maintaining its position that it would respond no further (doc. 5, ex. Z). This action ensued.

## II. DISCUSSION

Pursuant to the National Labor Relations Act ("NLRA"), the National Labor Relations Board was established to prevent unfair labor practices affecting commerce. *See* 29 U.S.C. § 160(a). The Board is empowered to levy charges against those engaging in unfair labor practices and conduct hearings on those charges. *Id.* § 160(b). To that end, the Board possesses broad investigatory authority to discover evidence and issue subpoenas requiring the attendance and testimony of witnesses. *See* 29 U.S.C. § 161(1). "[A]ny person being investigated or proceeded against" is properly subject to the Board's authority in relation to "any matter under investigation or in question." *Id.* Such subpoenas are revocable if "the evidence whose production is required does not relate to any matter under investigation." *Id.*

Upon application by the Board, district courts have the power to enforce subpoenas issued by the Board. While a motion to enforce a subpoena arising as part of a discovery dispute in a civil action might ordinarily be handled by a magistrate judge as a nondispositive matter, a proceeding under 29 U.S.C. § 161 does not occur during the discovery process of a civil case at large. Rather, this enforcement proceeding is in essence a civil action unto itself; once the matter of the subpoena's enforcement is resolved, the action is concluded. *See* N.L.R.B. v. Frazier, 966 F.2d 812, 816–17 (3d Cir. 1992). Hence, because a decision on the instant matter will be dispositive of the case, the undersigned, pursuant to 28 U.S.C. § 636(b)(1), issues this Report and Recommendation to the District Court. *See id.* at 817–18; *see also* N.L.R.B. v. Edwards, No. 2:11MC3546–WKW, 2012 WL 235522 at *1 n.1 (M.D. Ala. Jan. 10, 2012).

The role of a district court in a proceeding to enforce the Board's subpoena powers is narrow. *See* EEOC v. Children's Hospital Medical Center of Northern California, 719 F.2d 1426, 1428 (9th Cir. 1983). Review is limited to whether the evidence sought by the subpoena is material and relevant to the Board's purpose, whether the evidence sought is described with sufficient particularity, and whether the subpoena is overbroad or unduly burdensome. *See id.*; NLRB v. Carolina Food Processors, Inc., 81 F.3d 507, 510 (4th Cir. 1996); NLRB v. G.H.R. Energy Corp., 707 F.2d 110, 113 (5th Cir. 1982); *see also* EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 922 (11th

Cir. 1991) ("[T]he role of a district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency").

Durham contends that the Board has requested significant amounts of documentation, particularly from the voluminous personnel files of Durham employees, without having established a prima facie case of discrimination. Durham therefore argues that the Board's inquiry is without proper foundation and amounts only to a "fishing expedition" in search of evidence of discrimination. In support, Durham points out that the discovery requests aimed at particular comparator employees at Durham uncovered no evidence of disparate treatment or discrimination by Durham. This assertion is inaccurate, or became inaccurate, when the Board received information relevant to Bobby Johnson, who like Cramer had been involved in three preventable accidents but was not terminated, at least initially. Thus, even assuming for the sake of argument that the Board's inquiry to that point was not relevant or material to its purpose, it became so with the discovery of Durham's actions relevant to Bobby Johnson.

Durham also advances the argument that, since the other employees the Board had targeted in its discovery requests did not evidence any discrimination by Durham, Bobby Johnson was in essence treated differently than both Cramer <u>and</u> these other employees. Therefore, as the argument goes, the Board can only establish at best that Durham's enforcement policies were inconsistently applied, not that they were discriminatory. This argument is flawed, however, simply because the other employees were not similarly situated in the first place. Durham's argument would require that at least one "other employee" without union affiliations to have been properly terminated for three preventable accidents, but this is not the case. Johnson is the only true comparator employee, and his treatment provides evidence of differential treatment. Whether this is enough evidence for the Board to begin further proceedings is of no moment, but it is sufficient for the Court to conclude that the evidence sought by the Board is relevant and material to the investigation.

Next, Durham argues that, if the Board is accurate in their determination that a prima facie case exists, it should end its inquiry, ceasing further discovery, and issue a complaint. This argument flies in the face of Durham's other argument that the Board should not be allowed to conduct discovery because it does <u>not</u> have a prima facie case, effectively leaving the Board with

no grounds to proceed upon. Nonetheless, Durham's argument is unavailing because, under the PLRA the Board is entitled to discover relevant records whether the recipient of the subpoena is "being investigated" or is already being "proceeded against." *See* 29 U.S.C. § 161(1); Carolina Food Processors, Inc., 81 F.3d at 512; G.H.R. Energy Corp., 707 F.2d at 114.

Finally, Durham contends that the remaining discovery requests are too burdensome to comply with and in support files an affidavit from its Safety Supervisor Angela Quinn stating that the requests would require the review of 172 files for its current drivers and 130 files for drivers who were hired since 2012 (doc. 5, ex. Z).[3] She estimates that each file would contain 80 to 300 pages and would take one to two hours to review and to copy relevant documents (*id.*). The Board counters this by stating that it only seeks information on drivers working at Durham's Milton, Florida facility and not its other three facilities in Santa Rosa County, Florida. It approximates that there are 65 drivers at the Milton facility.

It is difficult to establish that an administrative subpoena is unduly burdensome. It must be shown that producing the subpoenaed documents would "seriously disrupt [the] normal business operations" of the recipient. Carolina Food Processors, Inc., 81 F.3d at 513 (quoting EEOC v. Maryland Cup Corp., 785 F.2d 471, 477 (4th Cir. 1986)). Nor is it sufficient to say that the subpoena will require perusal or production of a large number of documents. This is because companies like Durham should be able to administratively handle the scale of their own operation:

> The mere fact that compliance with the subpoenas may require the production of thousands of documents is . . . insufficient to establish burdensomeness . . . . "The mere size of [the employer's] operation is no excuse for its refusal to give information relative to possible unfair labor practices. It is presumed, by the very fact that [the employer] has such a large number of employees, that it is sufficiently equipped to handle the records of its employees."

Carolina Food Processors, Inc., 81 F.3d at 513–14 (quoting NLRB v. United Aircraft Corp., 200 F. Supp. 48, 51 (D. Conn. 1961), *aff'd*, 300 F.2d 442 (2d Cir. 1962)); G.H.R. Energy Corp., 707 F.2d at 114 (same).

---

[3] Quinn assumes that each hiring since 2012 constitutes a replacement for a driver who left Durham, and therefore adds the two numbers to arrive at an estimation that a total of approximately 300 driver files would need to be reviewed. *Id.*

Measured against this standard, Durham's task does not appear unduly burdensome. In so concluding, however, the Court notes that the Board requests in its application for enforcement of its subpoena that Durham comply with its discovery requests within ten calendar days (doc. 1 at 6). Given the present circumstances, Durham would be faced with at least an increased burden to comply with the subpoena within this narrow time frame. Accordingly, it will be recommended that the response time be increased to twenty-five days.

Because it will be recommended that the Court grant the Board's application, the undersigned will also address the Board's request for costs and attorney's fees that were incurred in the filing and briefing of this action for enforcement. As the prevailing party, the Board should be entitled to costs and should proceed in accordance with the Local Rules.

As for attorney's fees, the Board cites to several cases in which fees were awarded. As cases have noted, the NLRA, or at least the enforcement provisions of Sections 161 under which this action was brought, contains no provision regarding fees or costs. *See* NLRB v. Cable Car Advertisers, Inc., 319 F. Supp. 2d 991, 999 (N.D. Cal. 2004).[4] However:

> While there does not appear to be any basis for fees and costs under § 161 of the NLRA, such a provision may be found in Federal Rule of Civil Procedure 81. Rule 81 covers applicability of the Federal Rules to particular proceedings. Rule 81(a)(3) provides that "these rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." Further, Rule 81(a)(5) refers specifically to the applicability of the Rules to the NRLB, providing that "these rules do not alter practice in the U.S. district court of 29 U.S.C. §§ 159–160, for beginning and conducting proceedings to enforce orders of the National Labor Relations Board; and in respects not covered by those statutes, the practice in the district courts shall conform to these rules so far as applicable." Accordingly, the Court concludes that, because §§ 161(1) and (2) are silent on the matter of attorney's fees and costs with respect to a motion to enforce a subpoena, the Federal Rules are applicable pursuant to Rule 81(a)(3) and (5).

---

[4] While there is authority for fees and costs under Section 161(2), this subsection applies only after a party fails to obey an order of the district court enforcing compliance. *See* 29 U.S.C. § 161(2); Cable Car Advertisers, Inc., 319 F. Supp. 2d at 999.

>Courts have read the above provisions in Rule 81 to allow courts to apply the Federal Rules whenever possible—i.e., where statutory provisions are otherwise silent on procedural matters.

*Id.* at 999–1000 (footnotes and citations omitted).

In so applying the Federal Rules, the undersigned concludes, as have other courts,[5] that Rule 37 appropriately addresses a party's failure to make required discovery disclosures. In particular, Rule 37(a)(5)(A) provides an operative basis for the assessment of fees. The rule provides that, if a motion to compel discovery is granted:

>[T]he court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>>(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>>(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>>(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. Rule 37(a)(5)(A).

As evidenced by the substantial correspondence between the parties prior to the filing of this enforcement action—and notwithstanding Durham's characterization of the Board as brusque or inconsiderate during this process—the undersigned finds that the Board put ample effort into attempting to settle the matter outside the courthouse. Further, as detailed herein, Durham's objections were not substantially justified. Accordingly, it will be recommended that Durham pay the costs and fees that the Board incurred in filing and briefing this application for enforcement.[6]

---

[5] *See* Cable Car Advertisers, Inc., *supra*; NLRB v. Coughlin, No. 4:04-MC-8, 2005 WL 850964 (S.D. Ill. Mar. 4, 2005); NLRB v. Baywatch Sec. and Investigations, No. H-04-220, 2005 WL 1155109 (S.D. Tex. Apr. 28, 2005); NLRB v. A.G.F. Sports, Ltd., 1994 WL 50779, 146 LRRM 3022, 3024 (E.D.N.Y. 1994).

[6] The Court recognizes two separate cases where fees were not awarded in an NLRB enforcement action such as this one. *See* NLRB v. Edwards, No. 2:11MC3546-WKW, 2012 WL 235522 (M.D. Ala. Jan. 10, 2012); NLRB v. Midwest Heating And Air Conditioning, Inc., 528 F. Supp. 2d 1172 (D. Kan. 2007). However, both of these cases are readily distinguishable. Edwards involved a subpoena issued to an employee to provide testimony relative to coercion tactics being used by the employer under investigation. *See* 2012 WL 235522, at *2. Midwest Heating involved subpoenas issued to companies who were successor entities or third party entities to the company under investigation. *See* 528 F. Supp. 2d at 1175–76. As such, none of the recipients of subpoenas in these two cases were actually parties to the underlying investigation.

>The Court expresses doubt that this distinction is actually espoused by the Rule. Subsection (a)(1) provides that a party may move for an order compelling the discovery after providing notice "to other parties and all affected

Accordingly, it is respectfully **RECOMMENDED**:

1.	That the Board's application for enforcement of administrative subpoena duces tecum B-716522 be **GRANTED**.

2.	That Respondent Durham School Services, L.P., be Ordered to respond in full to subpoena duces tecum B-716522 as issued by the Board within **TWENTY-FIVE (25)** calendar days from the court's order adopting this Report and Recommendation, and to appear at the Board's offices at National Labor Relations Board, Region 15, 600 S. Maestri Place, 7th Floor, New Orleans, Louisiana, to produce the subpoenaed documents.

3.	That, upon failure by Respondent Durham to comply with the court's order, the court reserves the right to impose sanctions for contempt upon motion by the Board.

4.	That the Board's request for costs and attorney's fees be **GRANTED**, and the parties directed to proceed in accordance with Local Rule 54.2 as it pertains to costs and Local Rule 54.1(c) and (e) as it pertains to attorney's fees.

At Pensacola, Florida, this 10th day of October 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

---

persons."  Subsection (a)(5)(A) itself authorizes the court to "require the party or deponent" to pay attorney's fees. Nonetheless, aside from the accuracy of these holdings, they do not run contrary to this Court's position because they do not address the Rule as it pertains to parties.  To be fair, Edwards also appears to take the position that, because the subject of the subpoena was called in to testify before the Board, the enforcement action did not constitute a discovery matter under the purview of Rule 37.  *See* 2012 WL 235522, at *2.  The instant matter without doubt is one of discovery.

Case No.: 3:14mc52/MCR/EMT